**Brandon NEW, Plaintiff,**

v.

**John ASHCROFT, United States Attorney General and the United States of America, Defendants.**

**No. 02 CV 6609 ADS WDW.**

United States District Court,
E.D. New York.

Dec. 8, 2003.

Brandon New, Jericho, NY, Pro Se.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York by Paul Kaufman, Assistant United States Attorney, Central Islip, NY, for Defendants John Ashcroft and the United States of America.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is an action brought to invalidate the electoral college process and to remove George W. Bush as President of the United States. Presently before the Court is a motion by John Ashcroft, United States Attorney General and the United States of America (collectively, the "defendants") to dismiss this action pursuant to Rules 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

### I. BACKGROUND

On December 19, 2002, Brandon New ("New" or the "plaintiff"), appearing *pro se*, filed a 136–page complaint against the defendants. The complaint focuses primarily on the November 7, 2000 presidential election, in which the plaintiff voted for Al Gore. The plaintiff complains that, although Al Gore won the popular vote, George W. Bush captured the Presidency because he won a majority of the electoral college votes. The plaintiff contends that, as a New Yorker, his vote was mathematically devalued compared to votes by residents of smaller states, particularly those in the south and far west.

The plaintiff criticizes the electoral college process, asserting that it creates the possibility that the popular vote winner may lose the election. In particular, he states that the electoral college system is "faulty, constitutionally as applied, because a candidate who wins the national popular vote can easily lose the electoral vote majority to lose the presidential election." Due to the electoral college process, the plaintiff contends that his vote was "rendered mathematically worthless along with the popular votes of approximately 49,500,000 other citizens who voted for Al Gore Jr."

The plaintiff seeks to invalidate the electoral college process, established by Article II, Section 1, Clause 2, and the Twelfth Amendment of the United States Constitution. The plaintiff advocates for the direct election by popular vote of the president and vice president. New claims that Article II, Section 1 and the Twelfth Amendment are "facially unconstitutional as applied." The plaintiff also seeks to remove George W. Bush as President. In addition, the plaintiff proposes, in nearly incomprehensible detail, "bias hearings" to determine whether a federal judge should be disqualified from hearing a case involving election results. Furthermore, the plaintiff contends that Chief Justice William H. Renquist and Supreme Court Justices Thomas, Scalia, Kennedy, and O'Connor should be disqualified from hearing this case on bias grounds.

## II. DISCUSSION

The defendants contend that the plaintiff's complaint fails to state a claim upon which relief can be granted. In their motion, the defendants set forth several other grounds to dismiss this action, including issues related to standing, mootness, and ripeness, and jurisdiction over the subject matter. The Court need not address these issues because, for the reasons set forth below, the Court finds that the complaint fails to state a claim upon which relief can be granted.

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must liberally construe the claims, accepting all the factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). "The issue to consider is not whether the plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (citation omitted). Dismissal is proper only if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999).

In making this determination, the Court is mindful that New's *pro se* status means that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Indeed, courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth*, 710

F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

New's principal complaint is that the electoral college process as set forth in Article II, Section 1, Clause 2 and Twelfth Amendment is unconstitutional because, as a New Yorker, his vote was diluted compared to votes of residents in other states. The Court interprets his complaint as alleging that the electoral college is unconstitutional on the ground that it offends the "one person-one vote" principle. The plaintiff misapprehends this rule.

The one person, one vote principle is embodied in the Equal Protection Clause of the Fourteenth Amendment, *Rice v. Cayetano*, 528 U.S. 495, 522, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000), and was first articulated by the Supreme Court in *Gray v. Sanders*, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). In that case, the Supreme Court invalidated Georgia's indirect primary system, where candidates for statewide offices were elected by county unit voting, which allocated greater weight to votes by residents in underpopulated counties of the state, rather than the direct popular vote. *Gray*, 372 U.S. at 379, 83 S.Ct. 801. The Supreme Court held that "once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment." *Id.*

In *Gray*, the Supreme Court rejected Georgia's attempt to analogize its unit voting system to the federal electoral college, stating that the analogy was "inapposite." *Id.* at 378, 83 S.Ct. 801. "The inclusion of the electoral college in the Constitution, as a result of specific historical concerns," the Supreme Court said, "validated the collegiate principle despite its inherent numerical inequality . . . ." *Id.* The Supreme Court made clear that "the only weighing of votes sanctioned by the Constitution concerns matters of representation, such as the allocation of Senators irrespective of population and the use of the electoral college in the choice of the President." *Id.* at 380, 83 S.Ct. 801; *see also Penton v. Humphrey*, 264 F.Supp. 250, 251 (S.D.Miss.1967) (acknowledging that under *Gray*, "the alleged inequities of the electoral college are an exception of the application of [the one person, one vote] doctrine").

Notwithstanding the holding in *Gray*, New attacks the electoral college by relying heavily on *Wesberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), in which the Supreme Court extended the one person, one vote doctrine to congressional districting plans. New's reliance on *Wesberry* is misplaced. In *Wesberry*, voters challenged a Georgia apportionment statute, which set out the congressional voting districts in the state, arguing that their individual votes did not carry the same weight as those votes by residents in less inhabited districts in the state. 376 U.S. at 4, 84 S.Ct. 526. In striking down the statute, the Supreme Court held that "in debasing the weight of appellant's votes the State has abridged the right to vote for members of Congress guaranteed them by the United States Constitution." *Id.* That case is distinguishable from the present case insofar as New does not allege that his vote was weighed less than votes of other New York residents. Rather, the plaintiff claims that his vote was diluted compared to votes by residents in other states. Moreover, and most importantly, *Wesberry* did not implicate the constitutionally created electoral college.

Similar to this case, in *Trinsey v. United States of America*, No. 00–5700, 2000 WL 1871697, at *2 (E.D.Pa. Dec. 21, 2000), a court was confronted with a constitutional challenge to the electoral college system on the ground that President Bush won the 2000 Presidential without winning the popular vote. In *Trinsey*, the court rejected the plaintiff's argument that the Twelfth Amendment unconstitutionally denied the majority of the voters their right to a one person one vote in the November 2000 presidential election. The court held "[n]either the Constitution nor the 'one person, one vote' doctrine vests a right in the citizens of this country to vote for Presidential electors ... or empowers the courts to overrule constitutionally mandated procedure in the event that the vote of the electors is contrary to the popular vote." *Trinsey*, 2000 WL 1871697, at *2. In dismissing the action, the court determined that "there exists no legal theory upon which the [c]ourt can enter judgment for the [p]laintiff." *Id.*, at *4.

The Court acknowledges that producing an electoral vote winner from a popular vote loser in the 2000 presidential election is viewed by many citizens that the electoral college is flawed. Indeed, many notable figures have voiced their criticism of the electoral college and have advanced proposals to reform the electoral college system. Shortly after she was elected to the Senate in November 2000, it was widely-reported that Senator Hillary Rodham Clinton called for the abolition of the electoral college. *See, e.g.,* Dean E. Murphy, *In Upstate Victory Tour, Mrs. Clinton Says Electoral College Should Go,* N.Y. Times, Nov. 11, 2000, at B1.

However, the Court's role is to interpret and enforce the Constitution. It is "not empowered to strike the document's text on the basis that it is offensive to itself or is in some way internally inconsistent ...

[i]n other words, the electoral college cannot be questioned constitutionally because it is established by the Constitution." *Trinsey,* 2000 WL 1871697, at *3 (citing *Irish v. Democratic–Farmer–Labor Party of Minnesota,* 287 F.Supp. 794, 803 (D.Minn.1968)). As such, the Court finds that the plaintiff's complaint fails to state a claim upon which relief can be granted. Accordingly, the complaint is dismissed in its entirety.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion to dismiss the complaint in its entirety is **GRANTED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**