**Alan Jay FELDMAN, Plaintiff,**

v.

**NASSAU COUNTY, Nassau County Civil Service Commission, and the Nassau County Police Department, Defendants.**

**No. 04–CV–0900.**

United States District Court, E.D. New York.

Dec. 10, 2004.

Barry D. Haberman, New City, NY, for Plaintiff.

Peter J. Famighetti, Office of the Nassau County Attorney, Mineola, NY, for Defendant.

**OPINION & ORDER**

FEUERSTEIN, District Judge.

## I. Introduction

Plaintiff Alan Jay Feldman ("plaintiff") commenced this action alleging that his disqualification for employment as a Nassau County police officer was the result of discrimination and retaliation in violation of, *inter alia,* the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); and the Nassau County Administrative Code § 21–9.0 et. seq. Defendants have moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). For the reasons set forth below, the motion is GRANTED.

## II. Background [1]

Plaintiff is a fifty-one year old Caucasian male. (Am.Compl.para.23–25). In 1977, plaintiff received a score of eighty-nine and a half (89.5) on a hiring examination used by the Nassau County Police Department ("NCPD"). (*Id.* para. 56–57).

On September 21, 1977, the United States Department of Justice ("the DOJ") filed suit alleging that the NCPD engaged in a pattern or practice of employment discrimination against African Americans, Hispanics, and females in violation of, *inter alia,* Title VII. On April 21, 1982, the DOJ and Nassau County entered a consent decree (the "Consent Decree"), which was approved by United States District Judge George Pratt, to resolve the NCPD's al-

---

**1.** As is required on motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint are accepted to be true for pur-
poses of these motions, and all reasonable inference are drawn therefrom in favor of plaintiff. The allegations do not, however, constitute findings of fact by the Court.

leged employment discrimination. (*Id.* para. 58). As a result, according to plaintiff, defendants instituted different criteria for appointment to the NCPD based upon the applicant's race, ethnicity, and gender. (*Id.* para. 60). Plaintiff alleges that the required score on the hiring examination was ninety-two (92) for Caucasian males, eighty-five (85) for Hispanics and females, and seventy-nine (79) for African American males. (*Id.* para. 61).

After receiving a letter dated August 24, 1988 from plaintiff regarding the NCPD examination process, the Nassau County Attorney's Office responded that "it was the U.S. Department of Justice which has unintentionally changed your career plans, and not the County nor the Civil Service Commission." (*Id.*, exh. 8). The letter further stated, "While it is unfortunate, you are but one of many individual 'white males' who were forced to modify their career aspirations for the sake of the larger picture." (*Id.*).

In 2002, plaintiff submitted an application to the Nassau County Civil Service Commission ("Civil Service Commission") to take Police Officer Examination No. 3000. (*Id.* para. 26). The Civil Service Commission denied the application because plaintiff was over the maximum age of thirty-five (35) years set forth by section 58(1)(a) of the New York Civil Service Law. (*Id.*, exh. 4); *see also* N.Y. Civ. Serv. Law § 58(1)(a) (McKinney 2004). Upon plaintiff's appeal of the denial of his application, the Civil Service Commission responded that it would "adhere to the letter of rejection as originally sent." (Am. Compl., exh. 6).

On September 5, 2003, plaintiff filed two (2) verified complaints with the Equal Employment Opportunity Commission ("EEOC"), one against the Civil Service Commission and the other against the NCPD. (*Id.*, exh. 1–2). Both complaints alleged that the denial of his application to take Police Officer Examination No. 3000 in 2002 was based upon age discrimination, that the denial of the opportunity to take the examination was made in retaliation for plaintiff's earlier complaints of "reverse discrimination" and that he had been denied employment in the Police Department based on race discrimination. (*Id.*). The EEOC, after determining that it was "unable to conclude that the information obtained establishes violations of the statutes[,]" issued a right-to-sue letter, which is required to commence an action in federal district court. (*Id.*, exh. 3).

This case was originally filed in New York State Supreme Court, Nassau County on December 19, 2003. (Docket No. 1) Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1441. (*Id.*). Plaintiff subsequently filed an amended complaint alleging seven (7) causes of action. (Am.Compl.).

III. Standard of Review

A motion to dismiss should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir.2003); *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 145 (2d Cir.2002). In deciding a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir.2003); *New v. Ashcroft*, 293 F.Supp.2d 256, 257 (E.D.N.Y.2003). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt*, 340 F.3d at 101 (internal quotation and citation omitted). The issue is not whether the plaintiff will ultimately

prevail, but whether he or she is entitled to offer evidence to support the claims. *New*, 293 F.Supp.2d at 257 (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

## IV.   Analysis

### A.   Count One

■   Count One alleges that the November 2002 denial of plaintiff's application to take Police Officer Examination No. 3000 based upon his age violated Title VII and the ADEA. (Am.Compl.para.27, 35).   Title VII prohibits an employer from failing to hire an individual because of such individual's race, color, religion, sex, or national origin.   42 U.S.C. § 2000e–2 (2004).   Although age discrimination is not covered by Title VII, the ADEA protects workers over the age of forty (40) by making it unlawful for any employer to fail or refuse to hire or otherwise discriminate against an individual because of such individual's age.   29 U.S.C. § 623(a).   However, the ADEA provides an exception to its general prohibition against age discrimination for the employment of law enforcement officers.   According to 29 U.S.C. § 623(j):

> Employment as . . . law enforcement officer.   It shall not be unlawful for an employer which is a State [or] a political subdivision of a State . . . to fail or refuse to hire . . . any individual because of such individual's age if such action is taken—. . . pursuant to a bona fide hiring . . . plan that is not a subterfuge to evade the purposes of this Act.

*Id.* § 623(j)(2).   Defendants contend that the denial of plaintiff's application to take Police Officer Examination No. 3000 was required by section 58(1) of the New York Civil Service Law, which states in pertinent part that:

> Notwithstanding any other provision of this law or any general, special or local law to the contrary, no person shall be

eligible for provisional or permanent appointment in the competitive class of the civil service as a police officer of any police force or police department of any county . . . unless he shall satisfy the following basic requirements:

> (a) he is not . . . more than thirty-five years of age as of the date when the applicant takes the written examination.

N.Y. Civ. Serv. Law § 58(1)(a).   "[I]f requirements to hold a position are mandated by statute, 'it is beyond the power and jurisdiction of the New York State Civil Service Commission *or any other administrative body* to confer upon an applicant eligibility for appointment denied to him by the Legislature.'" *Petrelli v. City of Mount Vernon*, 9 F.3d 250, 255 (2d Cir. 1993) (quoting *Martin v. State*, 86 A.D.2d 712, 447 N.Y.S.2d 41, 43 (3d Dep't 1982), *appeal denied mem.*, 57 N.Y.2d 602, 454 N.Y.S.2d 1026, 439 N.E.2d 1245 (1982)) (emphasis added).   Thus, the Civil Service Commission did not have authority to waive § 58(1)(a)'s requirement that police officer applicants be under thirty-five (35) years of age.   *See id.*   ("Section 58(1)(a) does not delegate any power to . . . municipalities;   its sets out the firm rule of the Legislature.").

■   Plaintiff contends that § 58(1)'s age limitation is not a bona fide occupational qualification and thus the statute is not covered by the ADEA's law enforcement exception.   (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss at 11–13).   Essentially, plaintiff claims that § 58(1)(a) violates the Equal Protection Clause of the Fourteenth Amendment.   However, if an age classification is rationally related to a legitimate state interest, states may discriminate on the basis of age without violating the Fourteenth Amendment.   *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 63,

120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *McGinty v. New York,* 251 F.3d 84, 91 (2d Cir.2001). The Second Circuit has previously upheld a more restrictive age limitation for police officers than the one at issue. *Doyle v. Suffolk County,* 786 F.2d 523 (2d Cir.1986). In *Doyle,* the Second Circuit ruled that New York's then-existing statutory prohibition against hiring police officers over the age of twenty-nine (29) was constitutional.[2] *Id.* at 528–29. The *Doyle* court stated that "[i]t is not irrational for the New York legislature to believe that physical abilities to perform the duties of a police officer decline beyond age 29." *Id.* at 528.

The New York State Assembly found that "older officers leave the force at a higher rate than young officers and utilize more sick leave. With per officer training costs calculated at an estimated $100,000, officer long term retention becomes an economic issue for the State." (N.Y.Legis.Memo., ch. 329). Economic considerations are legitimate bases upon which to uphold an age classification. *See Doyle,* 786 F.2d at 529 ("The legislature could . . . decide that the limited financial resources of the State's communities would be best used if physical testing was undertaken only among the group most likely to yield qualified candidates."); *Klotsche v. City of New York,* 621 F.Supp. 1113, 1118 (S.D.N.Y.1985) ("Courts . . . have accepted economic considerations as a legitimate state interest in equal protection cases."). Since the age limitation of § 58(1)(a) is rationally related to the legitimate state interest of conserving financial resources, as well as ensuring a physically capable police force, the statute does not violate the United States Constitution.

■ Given the legitimate government purposes of § 58(1)(a)'s age limitation, the state statute was not a subterfuge to evade the purposes of the ADEA and falls within the ADEA's law enforcement exception. Accordingly, plaintiff has failed to state a claim under the ADEA and Count One is dismissed.

**B. Count Two**

Count Two alleges that the November 2002 denial of plaintiff's application to take Police Officer Examination No. 3000 was in retaliation for plaintiff's earlier charges of "reverse discrimination" against defendants. (Am.Compl.para.43). Defendants contend that plaintiff's retaliation charge fails to state a claim upon which relief could be granted. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 10–11). Plaintiff counters that under the Supreme Court's recent decision in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), an employment discrimination complaint must only give the defendant fair notice of the claim and the grounds upon which it rests. (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss at 13–14).

■ In *Swierkiewicz,* the Supreme Court held that a employment discrimination complaint need not plead specific facts establishing a prima facie case, but rather must " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz,* 534 U.S. at 511–12, 122 S.Ct. 992 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In his complaint, plaintiff alleges that "the denial of the opportunity to sit for the examination is in retaliation for . . . [plaintiff's]

---

**2.** Prior to July 6, 1994, N.Y. Civ. Serv. Law § 58(1)(a) rendered those over age twenty-nine (29) ineligible for appointment as police officers. Although § 58(a)(1) was amended in 1994 to eliminate the maximum age restriction, (L 1994, ch. 278), a 1999 amendment to the statute enacted the current thirty-five (35) year age limitation. (L 1999, ch. 329).

earlier charges of 'reverse discrimination' by the Defendants." (Am.Compl.para.43). However, *Swierkiewicz* also stated that " 'a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Defendants' compulsory compliance with N.Y. Civ. Serv. Law § 58(1)(a)'s age limitation provides a non-retaliatory reason for denying plaintiff's application to take the police examination. Thus, even assuming that defendants were provided with fair notice of the basis of plaintiff's claims of retaliation, it is clear that § 58(1)(a) bars any relief for the retaliation claim. Accordingly, Count Two is dismissed.

### C. Count Three[3]

#### 1. Civil Rights Act of 1964

Count Three alleges that by complying with the Consent Decree, defendants discriminated against plaintiff on the basis of race and gender in violation of Title VII of the 1964 Civil Rights Act. (Am. Compl.para.66–69). Specifically, plaintiff alleges that pursuant to the Consent Decree, defendants "instituted three different sets of eligibility lists for appointment . . . to achieve improper racial or gender quotas." (*Id.* para. 60).

#### (a). The Consent Decree

■ Defendants contend that they cannot be held liable for abiding by the Consent Decree, which states:

Remedial actions and practices *required* by this Decree shall not constitute un-

lawful discrimination within the meaning of any provision of the Constitution of the United States or of any Federal statute, rule, regulation, executive order or other source of federal law, of any provision of the Constitution of the State of New York or of any State statute, rule, regulation, executive order or other source of State law.

(Defs.' Not. of Mot. to Dismiss, exh. B at 3) (emphasis added). However, reliance upon this language is misplaced since the Consent Decree does not *require* the remedial action and practice of setting the passing examination score for minorities and women lower than that for white males. In *Hayden v. Nassau County,* 180 F.3d 42 (2d Cir.1999), the Second Circuit rejected a challenge to the hiring examination used by the NCPD that reduced the discriminatory impact on minority and female candidates in furtherance of multiple consent decrees, including the one at issue here. The plaintiffs in *Hayden* contended that by deliberately designing an entrance examination that minimized the adverse impact on African American applicants, the County necessarily discriminated against white, Latino, and female applicants. *Id.* at 47. In holding that an entrance exam crafted to lessen the discriminatory impact on minority candidates did not establish an intent to discriminate against non-minority candidates, *id.* at 52, the Second Circuit noted that there was no suggestion that the County sought to adversely affect or disadvantage the plaintiffs since the test was scored in an identical manner and no differential scoring cutoffs were used. *Id.* at 50–51; *see also Carrabus v. Schneider,* 119 F.Supp.2d 221 (E.D.N.Y.2000) (rejecting a virtually identical challenge to a Suffolk County police examination). Thus,

---

**3.** Count Three does not seek relief under the Equal Protection Clause of the Fourteenth Amendment.

the Second Circuit's holding in *Hayden* suggests that differential scoring cutoffs could be evidence of an intent to discriminate against non-minority applicants.

(b). Statute of Limitations and the Doctrine of Laches

■ Defendants also claim that plaintiff's Title VII claims are barred by the statute of limitations. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 11–14). Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice or, if the claimant has previously filed the charge with a state or local equal employment agency, within 300 days of the alleged discrimination. 42 U.S.C. § 2000e–5(e). A claim is time-barred if a charge is not timely filed with the EEOC. *Butts v. City of New York Dep't of Housing*, 990 F.2d 1397, 1401 (2d Cir.1993).

Plaintiff has never filed an EEOC complaint alleging gender discrimination. On September 5, 2003, plaintiff filed two (2) verified complaints with the EEOC alleging, *inter alia*, that plaintiff had been denied of NCPD employment based on race discrimination. (Am.Compl., exh. 1–2). Although the EEOC charge does not specify when the alleged race discrimination occurred, the most recent racially discriminatory conduct alleged in the amended complaint refers to the Nassau County Attorney's Office response to plaintiff's letter of August 24, 1988. (*Id.* exh. 8). Therefore, plaintiff's EEOC charges were filed more than 300 days after the last alleged unlawful employment practice.

■ However, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v.*

*Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Plaintiff contends that defendants' continuous discrimination is a ground for equitable tolling. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 16). Under the continuing violation doctrine, "a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997).

In *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court held that 42 U.S.C. § 2000e–5(e)(1) "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 105, 122 S.Ct. 2061. "[D]iscrete acts such as termination, failure to promote, denial of transfer, or *refusal to hire* are easy to identify. Each incident of discrimination ... constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114, 122 S.Ct. 2061 (emphasis added). Even if related to the acts alleged in timely filed charges, discrete discriminatory acts are not actionable if time-barred. *Id.* at 113, 122 S.Ct. 2061. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*

■ Even if defendants engaged in unlawful race discrimination in the 1980s by refusing to hire plaintiff, such acts were separate and discrete occurrences not subject to the continuing violation doctrine. Hence, those race-based claims under Title VII arising from discrete incidents that took place before November 9, 2002, more than 300 days prior to the EEOC filing,

are time-barred. Plaintiff's gender discrimination claim, even if alleged in the EEOC charge, would be time-barred for the same reason.

Plaintiff also contends that the equitable doctrine of laches applies rather than the statutory limitations period. (Pl.'s Mem. of Law in Opp'n to Def.s' Mot. to Dismiss at 18). In *Brennan v. Nassau County,* 352 F.3d 60 (2d Cir.2003), the district court denied the plaintiffs' applications to enforce the Consent Decree as time barred under the statute of limitations and the doctrine of laches. *Id.* at 62. The Second Circuit held that since consent decrees are equitable in nature, they are subject to equitable defenses and not legal defenses such as the statute of limitations. *Id.* at 63–64. Accordingly, the district court's order was vacated and remanded with instructions to further develop the factual record before determining whether the claims were barred by laches. *Id.* at 64. Here, plaintiff does not seek enforcement of the Consent Decree, but rather alleges that defendants' actions pursuant to the Consent Decree violated Title VII. Thus, the doctrine of laches is inapplicable and the statutory limitations period applies.

Based upon the foregoing, Count Three is dismissed.

**D. Counts Four and Five**

■ Counts Four and Five allege that defendants' refusal to permit plaintiff to take the examination in 1983 and 1987, respectively, constituted age discrimination in violation of Title VII. (Am. Compl.para.76–78, 80, 86–89, 95). As noted above, age discrimination is not covered by Title VII. *See* 42 U.S.C. § 2000e–2. However, even if these age discrimination claims were properly pleaded under the ADEA, dismissal would nevertheless be appropriate because plaintiff failed to timely file administrative charges regarding

these claims as required by the ADEA. *See* 29 U.S.C. § 626(d); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001). Moreover, since the failure to hire plaintiff in 1983 and 1987 were separate and discrete occurrences from the denial of his application to take Police Officer Examination No. 3000 in 2002, an act that was alleged in timely filed charges, the 1983 and 1987 claims of age discrimination are not subject to the continuing violation doctrine. *See Morgan,* 536 U.S. at 113–14, 122 S.Ct. 2061.

■ Counts Four and Five further allege that defendants "selectively" and "arbitrarily" permitted other individuals over the age of twenty-nine (29) to take the police examination in violation of plaintiff's right to due process. (Am. Compl.para.78–79, 93–94). Defendants contend that these claims are barred by the statute of limitations. Section 1983 claims are governed by state statute of limitations for general personal injury actions, *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), which in New York is three years. N.Y. C.P.L.R. § 214 (McKinney 2004). A § 1983 claim accrues when the plaintiff knows or has reason to know of the allegedly impermissible conduct and the resulting harm. *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980).

In its September 1988 response to plaintiff's letter of August 1988, the Nassau County Attorney's Office wrote: "At this point in time, the age criteria has [sic] been upheld by the Supreme Court and is being and will continue to be applied uniformly to all applicants." (Am. Compl.exh.8). Arguably, this language demonstrates that plaintiff's August 1988 letter, which is not included in the record, complained that age criteria were not being uniformly applied. However, it is de-

fendants' burden to show when the cause of action accrued. "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, the complaint should not be dismissed on motion...." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir.2004) (internal citation omitted).

■ The complaint does not specify whether plaintiff's claims are for the denial of procedural due process or substantive due process. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person must have more than an abstract need or desire for it ... [h]e must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. Although courts have recognized a property interest in continued employment, *see Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir.2004) ("There is no question that a public employee who has a right not to be fired without just cause ... has a property interest in her employment that qualifies for ... protections of procedural due process.") (internal citation omitted), plaintiff's desire to join the NCPD is not a cognizable property interest. *See Peterson v. City of New York*, No. 97–4505, 97–4513, 1998 WL 247530, at *6 (S.D.N.Y. May 14, 1998) (plaintiff seeking employment as New York City police officers "cannot ground a property interest on the fact of having passed the applicable civil service examinations."); *Andriola v. Ortiz*, 82 N.Y.2d 320, 604 N.Y.S.2d 530, 532, 624 N.E.2d 667 (1993) ("[W]e have held that a person successfully passing a competitive Civil Service examination does *not* acquire

a legally protectable interest in an appointment to the position for which the examination was given ....") (internal citation omitted), *cert. denied*, 511 U.S. 1031, 114 S.Ct. 1541, 128 L.Ed.2d 193 (1994).

■ "It is well settled that, where 'the alleged right ... cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental,' notions of substantive due process will not apply." *Local 342 v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (quoting *Reno v. Flores*, 507 U.S. 292, 303, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). "Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). Since this Court has determined that plaintiff does not have a property right to appointment as a police officer, the failure to allow him to take the police examination did not violate his right to substantive due process. *See Peterson*, 1998 WL 247530, at *8.

Accordingly, Counts Four and Five are dismissed.

### E. Count Six

■ Count Six alleges age, race, and sex discrimination and retaliation in violation of the NYSHRL. (Am. Compl.para.101). Defendants contend that plaintiff's state discrimination claims must be dismissed for failure to file a notice of claim as required by N.Y. General Municipal Law §§ 50–e and 50–i and N.Y. County Law § 52(1). *See* N.Y. Gen. Mun. Law §§ 50–e, 50–i (McKinney 2004); N.Y. County Law § 52(1) (McKinney 2004). Plaintiff counters that the notice of claim requirement of § 50–e does not apply to Human Rights Law claims against a municipality because employment discrimination is not a tort. *See, e.g., Gentile v.*

*Town of Huntington,* 288 F.Supp.2d 316, 320 (E.D.N.Y.2003).

However, N.Y. County Law § 52(1), the statute applicable to plaintiff's claims against Nassau County and its entities, is broader than N.Y. General Municipal Law § 50–e. *Keating v. Gaffney,* 182 F.Supp.2d 278, 291 (E.D.N.Y.2001); *Pustilnik v. Hynes,* No. 99–4087, 2000 WL 914629, at \*7 (E.D.N.Y. June 27, 2000). Section 52 of the County Law provides, in pertinent part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... *and any other claim for damages arising at law or in equity,* alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in accordance with section fifty-e of the general municipal law.

N.Y. County Law § 52 (emphasis added). In turn, § 50–e of the General Municipal Law states that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action ... the notice of claim shall ... be served ... within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50–e. In *Mills v. County of Monroe,* 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983), the New York Court of Appeals held that "[w]hen an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court." *Id.* at 308, 464 N.Y.S.2d 709, 451 N.E.2d 456.

The notice of claim provision of § 52 covers plaintiff's claims against Nassau County and its entities, which include the Civil Service Commission and the NCPD. *See Picciano v. Nassau County Civil Serv. Comm'n,* 290 A.D.2d 164, 171, 736 N.Y.S.2d 55 (2d Dep't 2001); *Freudenthal v. County of Nassau,* 283 A.D.2d 6, 10, 726 N.Y.S.2d 116, 117 (2d Dep't 2001). Since plaintiff never filed a notice of claim upon the defendants within ninety (90) days of the date his claims arose, and the time to do so has expired, his state law claims must be dismissed unless his action was brought to vindicate a public interest or he has been granted leave to serve a late notice of claim. *See Mills,* 59 N.Y.2d at 308, 464 N.Y.S.2d 709, 451 N.E.2d 456.

According to the complaint, "Plaintiff, 'Feldman', is entitled to the opportunity to qualify for the position of employment ..., back pay and front pay, and all benefits (health, pension, etc.) that would have accrued with said employment." (Am. Compl.para.102). Plaintiff's allegations of discriminatory conduct on the part of the defendants refer solely to conduct that affects his interest in employment as a police officer. *See Mills,* 59 N.Y.2d at 312, 464 N.Y.S.2d 709, 451 N.E.2d 456; *see also Keating,* 182 F.Supp.2d at 291. Since plaintiff seeks the enforcement of his private interests, the public interest exception to the notice of claim requirement is inapplicable. Additionally, plaintiff has not sought leave from this Court to serve a late notice of claim.

Accordingly, Count Six is dismissed.

### F. Count Seven

■ Count Seven alleges age, race, and sex discrimination and retaliation in violation of the Nassau County Administrative Code. (Am.Compl.para.108). Nassau County Administrative Code § 11–4.1 provides, in relevant part:

Any claim against the County for damages for death or for injuries to person or property ... arising at law or in equity and ... sought to be enforced at law or in equity ... alleged to have been caused or sustained in whole or in part by or because of any misfeasance, negligence, omission of duty, wrongful act, fault or neglect on the part of the County or any of its agents, officers or employees, must be presented in writing to the clerk of the Board of Supervisors[4] of the County and to the County Attorney within thirty days after such damages or injury to person ... were sustained.

Nassau County Admin. Code § 11–4.1, *available at* **http://www.nassaucounty-ny.gov** (last updated Oct. 4, 2004). Since plaintiff never filed a notice of claim upon the clerk of the Nassau County Legislature or upon the Nassau County Attorney within thirty (30) days of the date his claims arose, and the time to do so has expired, his claims under the Nassau County Administrative Code must be dismissed.

V. Conclusion

Defendants' motion to dismiss is GRANTED and plaintiff's complaint is dismissed in its entirety. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

---

4. The Nassau County Board of Supervisors was replaced with the Nassau County Legislature in 1994. *Goosby v. Town Bd. of Hempstead,* 956 F.Supp. 326, 331 (E.D.N.Y.1997); *Eclipse Enters. v. Gulotta,* 942 F.Supp. 801, 803 (E.D.N.Y.1996); *see also* N.Y. County Law § 150–a (McKinney 2004) ("All the functions, powers, obligations and duties which by law are possessed by or vested in the board of supervisors of a county may be exercised by an elected county legislative body....").