# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: December 8, 2005

Decided: January 9, 2006
Errata Filed: March 15, 2006)

Docket No. 05-0444-cv

ALAN JAY FELDMAN,

*Plaintiff-Appellant,*

v.

NASSAU COUNTY, NASSAU COUNTY CIVIL SERVICE
COMMISSION and NASSAU COUNTY POLICE DEPARTMENT,

*Defendants-Appellees.*

BEFORE: NEWMAN, CABRANES and HALL, *Circuit Judges.*

In an appeal from a judgment of the United States District Court for the Eastern District of
New York (Sandra J. Feuerstein, *Judge*) granting defendants' motion to dismiss the amended
complaint, plaintiff contends that New York State's statutory age limit for hiring police officers,
N.Y. Civ. Serv. Law § 58(1)(a), is a subterfuge that evades the purposes of the Age Discrimination in
Employment Act and therefore fails to qualify for the "law enforcement exception" in section 4(j)
of that act as amended, 29 U.S.C. § 623(j).

Affirmed.

BARRY D. HABERMAN, New City, NY, *for Plaintiff-Appellant.*

DAVID B. GOLDIN, Deputy County Attorney (Lorna B. Goodman,
County Attorney, *on the brief*), Nassau County Attorney's Office,
Mineola, NY, *for Defendants-Appellees.*

1

JOSÉ A. CABRANES, *Circuit Judge*:

We consider here whether section 58(1)(a) of the New York Civil Service Law,[1] which prohibits an applicant who is over thirty-five years of age at the time he sits for the civil service examination from becoming a police officer, fails to qualify for the "law enforcement exception" of section 4(j) of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 623(j). We hold that Feldman has failed to allege that section 58(1)(a) of the Civil Service Law is a "subterfuge to evade the purposes" of the ADEA, 29 U.S.C. § 623(j)(2), and the age limit satisfies the law enforcement exception.

Plaintiff Alan Jay Feldman was born in 1953. At some time prior to November 15, 2002, Feldman submitted an application to take the civil service examination required to become a police officer in Nassau County; he was informed on November 15, 2002 by the Nassau County Civil Service Commission that his application had been denied because of his age. Feldman wrote a letter to the Civil Service Commission appealing the determination, and his appeal was denied. On September 5, 2003, Feldman filed two complaints with the Equal Employment Opportunity Commission ("EEOC"), alleging that the denial of his application was based on age discrimination. On September 22, 2003, Feldman received right-to-sue letters from the EEOC.

I.

Feldman filed this action in New York State Supreme Court, Nassau County, on December 19, 2003, alleging, *inter alia*, that he had been subjected to age discrimination in violation of the

---

[1] Section 58(1)(a) of the New York Civil Service Law provides, in pertinent part, that "no person shall be eligible for . . . appointment . . . as a police officer . . . unless he shall satisfy the following basic requirements: . . . he is not . . . more than thirty-five years of age as of the date when the applicant takes the written examination . . . ." The statute affords no discretion to local authorities, but rather requires that they comply with the established age limit. *See Petrelli v. City of Mount Vernon*, 9 F.3d 250, 255 (2d Cir. 1993) ("Section 58(1)(a) does not delegate any power to the . . . municipalities; it sets out the firm rule of the Legislature.").

ADEA.[2]  Defendants removed the action to the United States District Court for the Eastern District of New York, at which point Feldman amended his complaint.  Defendants thereafter brought a motion to dismiss the amended complaint, which the District Court (Sandra J. Feuerstein, *Judge*) granted on December 10, 2004.  *See Feldman v. Nassau County*, 349 F. Supp. 2d 528 (E.D.N.Y. 2004). The Court rejected Feldman's contention that section 58(1)(a) of the New York Civil Service Law, which sets an age limit for the hiring of police officers, represents a "subterfuge to evade the purposes" of the ADEA, 29 U.S.C. § 623(j)(2), and thereby fails to qualify for the law enforcement exception in section 4(j) of the ADEA, 29 U.S.C. § 623(j).  *See Feldman*, 349 F. Supp. 2d at 534.  This timely appeal followed.  We review *de novo* the dismissal of Feldman's amended complaint.  *See*, *e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

---

[2] In his amended complaint, Feldman asserted claims related to his 2002 application, as well as to instances in 1983 and 1987 when, under New York's prior age limitation statute, *see* note 4 *post*, he was denied employment with the Nassau County Police Department.  Specifically, Feldman maintained that in those prior instances, he was subjected to discrimination on the basis of his age, sex and race.  The District Court dismissed all of Feldman's claims.  *See Feldman v. Nassau County*, 349 F. Supp. 2d 528, 533-40 (E.D.N.Y. 2004).  On appeal, in addition to his contention that section 58(1)(a) of the New York Civil Service Law does not qualify for the law enforcement exception to the ADEA, Feldman argues that: (1) section 58(1)(a) violates Article V, section 6 of the New York Constitution; (2) a 1982 consent decree entered by the United States District Court for the Eastern District of New York in *United States v. Nassau County*, No. 77 Civ. 1881, prohibited defendants' alleged racial and sex discrimination; and (3) the denial of Feldman's application to sit for the 2002 exam was in retaliation for his earlier complaints of discrimination and consequently violated 42 U.S.C. § 2000e-3(a).  The first two of these arguments have been waived because Feldman failed to present them to the District Court.  *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005).

Feldman concedes that he did not advance a claim pursuant to the New York Constitution in the District Court.  He argues that he did raise a claim pursuant to the consent decree because he noted in his memorandum of law in opposition to defendants' motion to dismiss the amended complaint that defendants were "in violation of the explicit provisions of the Consent Decree."  Pl.-Appellant's supplemental letter brief, Dec. 9, 2005, at 6.  It is clear from the context that that comment—which is found in a section of Feldman's memorandum entitled "Plaintiff's Due Process Claims Are Not Extinguished Due to the Existence of the Consent Decree"—was made in passing as part of Feldman's argument that the consent decree did not *prohibit* him from asserting rights pursuant to the Due Process Clause. However, Feldman never asserted any rights pursuant to the consent decree.  *See Feldman*, 349 F. Supp. 2d. at 537 (Feldman did not "seek enforcement of the Consent Decree.").  Accordingly, since we are aware of no circumstances warranting the favorable exercise of our discretion to overlook the failure to assert these claims in the District Court, we deem them waived.  *See Allianz Ins. Co.*, 416 F.3d at 114.

Furthermore, we reject Feldman's retaliation claim substantially for the reasons set forth in the District Court's thoughtful and comprehensive opinion.  *See Feldman*, 349 F. Supp. 2d at 534-35.  We therefore affirm the dismissal of all of Feldman's claims.

II.

The ADEA generally protects individuals over forty from age discrimination in employment. *See* 29 U.S.C. §§ 623(a), 631(a); *McCarthy v. New York City Technical Coll.*, 202 F.3d 161, 165 (2d Cir. 2000) ("The ADEA makes it 'unlawful for an employer . . . to fail or refuse to hire or to discharge any individual [of at least 40 years of age] or otherwise discriminate against any [such] individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" (quoting 29 U.S.C. § 623(a)(1) (alterations in original))). As originally enacted in 1967, the ADEA did not apply its antidiscrimination principle to employees of state and local governments. *See* Pub. L. 90-202, § 11(b), 81 Stat. 602, 605 (1967) (codified at 29 U.S.C. § 630(b) (1970)) (excluding from definition of "employer" a "State or political subdivision thereof"). The statute was amended, however, in 1974 to cover employees of state and local governments. *See* Pub. L. 93-259, § 28(a)(2), 88 Stat. 55, 74 (1974) (amending section 11(b) of the ADEA, 29 U.S.C. § 630(b)). Two years later, the Supreme Court decided in *National League of Cities v. Usery*, 426 U.S. 833 (1976), that the Tenth Amendment prohibited the imposition of the wage and hour restrictions of the Fair Labor Standards Act on state and local governments. *Id.* at 851-52. In the wake of *National League of Cities*, it was unclear whether the Tenth Amendment similarly deprived Congress of the authority to mandate that states and localities comply with the requirements of the ADEA. *See Kopec v. City of Elmhurst*, 193 F.3d 894, 896-97 (7th Cir. 1999). The Supreme Court addressed that question in *EEOC v. Wyoming*, 460 U.S. 226 (1983), holding that the ADEA could be applied to state law enforcement officers. Following *Wyoming*, states and localities were plainly subject to the ADEA and were required to show that age was a bona fide occupational qualification ("BFOQ") in order to use age limitations in the hiring of law enforcement officers. *See Hahn v. City of Buffalo*, 770 F.2d 12, 16 (2d Cir. 1985) (concluding that section 58(1)(a) of the New York Civil Service Law was not justified by a BFOQ and that it therefore violated section 4(a) of the ADEA). In other words, states

4

and localities had to satisfy the same standard as private employers to justify using age as a criterion in employment decisions.

In 1986, Congress amended the ADEA to provide state and local governments an exception covering the employment of law enforcement officers and firefighters. Pub. L. 99-592, § 3, 100 Stat. 3342, 3342 (1986) (codified at 29 U.S.C. § 623(i) (1988)).[3] The amendment permitted state and local governments that had age restrictions for firefighters and law enforcement officers in place on March 3, 1983 (the day after *Wyoming* was handed down) to continue to apply those restrictions. *See id.*; *see also Petrelli v. City of Mount Vernon*, 9 F.3d 250 (2d Cir. 1993) (granting summary judgment to defendant municipality in ADEA suit by police applicant because section 58(1)(a) of the New York Civil Service Law was in effect on March 3, 1983). The amendment, which was "designed to provide states an opportunity to adjust to the Supreme Court's [*Wyoming*] decision," *State Police for Automatic Retirement Ass'n v. DiFava*, 317 F.3d 6, 9 n.3 (1st Cir. 2003), included a provision repealing the exception on December 31, 1993. *See* Pub. L. 99-592, § 3(b), 100 Stat. 3342, 3342 (codified at 29 U.S.C. § 623 note (1988)). When the exception lapsed at the end of 1993, the BFOQ standard once again applied to the employment of firefighters and law enforcement officers.

In 1996, Congress again amended the ADEA and reinstated a law enforcement exception. The 1996 exception, contained in section 4(j) of the ADEA as amended, 29 U.S.C. § 623(j), is substantially similar to the 1986 exception, but applies retroactively to the termination of the 1986 exception and without an expiration date. Pub. L. 104-208, § 119, 110 Stat. 3009, 3009-23 to 3009-24. The 1996 exception permits states and their political subdivisions, under certain circumstances, to engage in age discrimination with respect to the hiring and firing of firefighters or law enforcement officers. Specifically, the exception provides in pertinent part as follows:

---

[3] Section 623, as codified in 1988, contained two subsections designated "(i)." The subsection relevant here, the latter of the two, was relabeled "(j)" in a subsequent codification. *See* 29 U.S.C. § 623(j) (2000).

(j) Employment as firefighter or law enforcement officer

It shall not be unlawful for an employer which is a State [or] a political subdivision of a State . . . to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

> (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer . . . and the individual has attained—
>
> . . .       .       .       .
>
> > (A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or
> >
> > (B)(i) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; . . . and
>
> (2) pursuant to a bona fide hiring . . . plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(j). Pursuant to subsection (j)(1) of this provision, the exception can absolve a state or local government of liability under the ADEA for an age limit in law enforcement hiring regardless of whether that age limit was in existence pursuant to local law at the time *Wyoming* was decided, *see* 29 U.S.C. § 623(j)(1)(A), or whether it was enacted after the 1996 ADEA amendments that reinstated the law enforcement exception, *see* 29 U.S.C. § 623(j)(1)(B). By its terms, subsection (j)(2) requires that the relevant age limitation be a "bona fide hiring . . . plan" that is not a "subterfuge to evade the purposes" of the ADEA. 29 U.S.C. § 623(j)(2).

Feldman contends that section 58(1)(a) of the New York Civil Service Law —which prohibits an applicant who is over age thirty-five when sitting for the civil service examination from becoming a police officer—does not qualify for the law enforcement exception. Feldman concedes that prong (1) of section 4(j) is satisfied by section 58(1)(a) because New York's statute was enacted

in 1999[4] and because Feldman was over thirty-five when he applied to sit for the police officer exam in 2002. *See* 29 U.S.C. § 623(j)(1)(B)(i). Only prong (2) of section 4(j) is therefore at issue.

In *Kopec v. City of Elmhurst*, the Court of Appeals for the Seventh Circuit set forth a standard for determining whether a statutory age limitation constitutes a "bona fide hiring . . . plan" under section 4(j)(2) of the ADEA. The Court held that a "bona fide hiring . . . plan" is one "that is genuine and pursuant to which actual hiring decisions are made." *Kopec*, 193 F.3d at 901. Here, we need not decide whether to adopt that standard because, at oral argument, Feldman conceded that the age limit of section 58(1)(a) is a bona fide hiring plan within the contemplation of section 4(j)(2), and because we conclude that nothing in the record or the text of section 58(1)(a) suggests otherwise.[5]

Feldman insists that section 58(1)(a) constitutes a subterfuge because it "discriminates based upon age and not ability" and because the New York State legislature impermissibly relied on an "economic rationale" in enacting the statute. Pl.-Appellant's Reply Br. at 5. According to Feldman, "[a] subterfuge would . . . be any plan which discriminates on the basis of age and not ability, and it would be especially egregious if the rationale for the discriminatory act is one that is expressly prohibited by case law emanating from the ADEA, i.e.[,] economic justifications." *Id.* at 8 (internal quotation marks omitted). To support his contention that section 58(1)(a) was enacted for the purpose of conserving resources, Feldman points to the New York State Assembly Sponsor's

---

[4] Although section 58(1)(a) was originally enacted in 1965, *see* 1965 N.Y. Sess. Laws ch. 326, at 478-79 (McKinney) (providing an age limit of twenty-nine), the maximum age provision was repealed in 1994, *see* 1994 N.Y. Sess. Laws, ch. 278, at 887 (McKinney). The current version of section 58(1)(a), providing for an age limit of thirty-five, was enacted in 1999. *See* 1999 N.Y. Sess. Laws ch. 32, at 154 (McKinney).

[5] There is no need here to determine whether age is a BFOQ for the law enforcement job. Section 4(j) by its terms relieves law enforcement agencies of having to establish that age is a BFOQ in order to discriminate on the basis of age. *See Kopec*, 193 F.3d at 902 (pursuant to section 4(j), a municipality "need not prove that age is a BFOQ for its police officers"); *see also Knight v. Georgia*, 992 F.2d 1541, 1547 (11th Cir. 1993) (holding, under the substantially similar 1986 exception, a BFOQ showing was not necessary). The only required showing of bona fides under section 4(j) relates to the hiring plan itself and not whether age amounts to a proper qualification for the job. *See Kopec*, 193 F.3d at 902.

Memorandum supporting the 1999 amendment to section 58(1)(a). Under the heading

"Justification," that memorandum provided the following explanation for the legislation.

> Six years ago, New York State attempted an experiment which lifted the maximum age requirement for police recruits. At that time, questions were raised as to whether the age standard violated the Federal Age Discrimination in Employment Act (ADEA). However, in 1996, Congress partially exempted police agencies from coverage of the ADEA, thereby opening the door for reinstituting a maximum age requirement.
>
> Recent reports indicate that older officers leave the force at a higher rate than young officers and utilize more sick leave. With per officer training costs calculated at an estimated $100,000, officer long term retention becomes an economic issue for the State.

New York State Assembly Sponsor's Memorandum, L. 1999, ch. 32, *reprinted in* Governor's Bill

Jacket, L. 1999, ch. 32, at 5; *see also* Letter of Assemblyman Harvey Weisenberg to James McGuire,

Counsel to the Governor, April 19, 1999 (providing the same rationale for the legislation), *reprinted in*

Governor's Bill Jacket, L. 1999, Ch. 32, at 4.

Even if we assume *arguendo* that the New York legislature enacted section 58(1)(a) at least in

part on the basis of fiscal concerns, the statute would still not amount to a subterfuge for evasion of

purposes of the ADEA. We reject plaintiff's proffered definition of "subterfuge" because it defies

the common sense meaning of the word and the case law interpreting the word as it is used in the

context of section 4(j) and elsewhere. Instead, we construe the word "subterfuge" in accordance

with "its ordinary meaning, i.e., a scheme, plan, stratagem, or artifice of evasion." *Minch v. City of*

*Chicago*, 363 F.3d 615, 624 (7th Cir. 2004) (internal quotation marks and citations omitted); *see also*

*Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 103-06 (2d Cir. 1999) (similarly interpreting

the term "subterfuge" as used in the Americans with Disabilities Act); *Potenze v. New York Shipping*

*Ass'n., Inc.*, 804 F.2d 235, 238 (2d Cir. 1986) (similarly interpreting the term "subterfuge" as had

formerly been used in 29 U.S.C. § 623(f)(2)).

8

Plaintiff bears the burden of establishing that a particular hiring plan is a subterfuge under section 4(j)(2). *See Minch*, 363 F.3d at 627; *see also Pub. Employees Ret. Sys. v. Betts*, 492 U.S. 158, 181-82 (1989) (imposing the burden on the plaintiff to show that a bona fide employee benefit plan is a "subterfuge" under the then-current version of 29 U.S.C. § 623(f)(2)), *abrogated on other grounds by* Pub. L. 101-433, § 103, 104 Stat. 978, 978 (1990); *cf. Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 36 (2d Cir. 1999) (imposing the burden on plaintiff to show that an insurance practice is a "subterfuge to evade the purposes" of the Americans with Disabilities Act ("ADA") in violation of section 501(c) of the ADA, 42 U.S.C. § 12201(c)). We adopt the reasoning of the Seventh Circuit in *Minch* and conclude that, as a general rule, a plaintiff must show "that the employer is using the exemption as a way to evade another substantive provision of the act." *Minch*, 363 F.3d at 629.

There is nothing deceptive about the state legislature doing exactly what Congress provided it the authority to do—namely, benefitting from an exception to the general prohibition in the ADEA against discrimination on the basis of age. *See id.* ("[D]oing something that the statute expressly permits does not evade its prohibitions."). The law enforcement exception, which allows for the setting of age limits, expressly contemplates discrimination on the basis of age. Accordingly, despite plaintiff's contention to the contrary, showing that section 58(1)(a) discriminates on the basis of age rather than ability cannot be enough to make section 4(j) inapplicable. Were we to conclude otherwise, we would render section 4(j) a dead letter.

Feldman also cannot carry his burden by arguing that "Defendants-Appellees are using economic rationales to justify the refusal to hire." Reply Br. at 10. The supposed *rationale* for section 58(1)(a) does not indicate that the legislature used "the exemption as a way to evade another substantive provision of the act." *Minch*, 363 F.3d at 629. Feldman insists that "reliance on economic factors is in direct contravention of . . . substantive provisions of 2[9] U.S.C. [§] 623," Pl.-Appellant's Reply Br. at 14, but he never points to any specific provision of the ADEA that is

9

violated by section 58(1)(a). We decline to hold that a state legislature contravenes a substantive provision of the ADEA simply by taking fiscal considerations into account when instituting an age limit for new police officers. If we were to so hold, we would subvert section 4(j), as it is difficult to imagine a circumstance in which a legislature would not at least consider the fiscal implications of such a policy—indeed, it is difficult to imagine *any* legislation on social or labor concerns that is wholly divorced from budgetary or fiscal considerations.

Had plaintiff alleged that section 58(1)(a) was being applied in a calculated manner as a "means of discriminating in another aspect of the employment relationship—that is, other than in the [hiring] decision—in a way that the [ADEA] forbids," *Minch*, 363 F.3d at 629, this would be a different case. Instead, Feldman argues that the ADEA aims to prevent discrimination against older workers on the basis of stereotypes such as the perceived incremental expense of employing them. Indeed, in the ordinary course, when employers make hiring decisions that do not fall under an exception to the ADEA, refusal to hire based on stereotypical economic considerations can be "'plainly contrary to the terms of the Act and the purpose of Congress in enacting it.'" *Geller v. Markham*, 635 F.2d 1027, 1034 (2d Cir. 1980) (quoting 29 C.F.R. § 860.103(h) (1979)). However, this purpose of the ADEA is embodied in the very provisions of the ADEA to which section 4(j) provides an express exception. *See, e.g.,* 29 U.S.C. §§ 623(a)(1), 631(a). Like the Seventh Circuit in *Minch*, we do not read "subterfuge to evade the purposes" of the ADEA in section 4(j)(2) to undermine the very exception that section 4(j) provides; rather, we hold that plaintiff cannot prevail under section 4(j)(2) because he does not allege that New York's age limitation statute is a "subterfuge" that frustrates provisions of the ADEA not directly subject to the law enforcement exception. *See Minch*, 363 F.3d at 629. Even if true, the allegations in Feldman's amended complaint do not suggest, much less show, that New York is using section 58(1)(a) to violate any provision of the ADEA not directly covered by the law enforcement exception.

10

CONCLUSION

In sum, we hold that:

(1) to challenge a bona fide law enforcement hiring plan under the ADEA, a plaintiff bears the burden of establishing that the plan is being used as a "subterfuge"—in other words, in a discriminatory manner forbidden by a substantive provision of the statute not directly covered by the law enforcement exception;

(2) Feldman has not met that burden because he has alleged no facts indicating that New York Civil Service Law section 58(1)(a) is anything other than what it purports to be—an age restriction on the hiring of police officers pursuant to section 4(j).

*     *     *     *

We have considered all of plaintiff's arguments on appeal and find them to be without merit. Accordingly, we AFFIRM the judgment of the District Court.