**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

CHRIS KANNADY, personal
representative of the estate of Britton
Lynn Kannady,

        Plaintiff - Appellant,

v.

CITY OF KIOWA, an Oklahoma
municipal corporation; JIMMIE W.
BROWN, in his official and individual
capacities; DANNY L. DRAKE, in his
official and individual capacities;
SHERRY G. STONE, in her official
and individual capacities; JAMES V.
RYAN, in his official and individual
capacities; FREDDIE ADAMS, in his
official and individual capacities;
CITY OF KREBS, an Oklahoma
municipal corporation,

        Defendants - Appellees,

and

CITY OF McALESTER, an Oklahoma
municipal corporation,

        Defendant.

------------------------

STATE OF OKLAHOMA, ex rel.
W.A. Drew Edmondson, Attorney
General,
        Intervenor.

No. 07-7002

---

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(No. CV-05-476-S)**

---

Edward L. White (M. Blake Yaffe, D. Eliot Yaffe, and S. Alex Yaffe with him on the briefs), of Foshee & Yaffe, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Andrew M. Low of Davis Graham & Stubbs LLP, Denver, Colorado (Victoria V. Johnson and Shannon Wells Stevenson of Davis Graham & Stubbs LLP, Denver, Colorado, and Charles D. Neal Jr. and Eric D. Janzen of Steidley & Neil, P.L.L.C., McAlester, Oklahoma, with him on the brief), for Defendant-Appellee City of Krebs.

Warren Gotcher of Gotcher & Belote, McAlester, Oklahoma, filed a brief for Defendants-Appellees City of Kiowa, Jimmie W. Brown, Danny L. Drake, Sherry G. Stone, James V. Ryan, and Freddie Adams.

Andrew M. Low, Victoria V. Johnson, and Shannon Wells Stevenson of Davis Graham & Stubbs LLP, Denver, Colorado, and Kindanne Jones, Assistant Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Intervenor State of Oklahoma.

---

Before **O'BRIEN**, **McKAY**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Britton Lynn Kannady[1] sought employment as a police officer in the Cities

of Krebs and McAlester after he left his job as an officer for the City of Kiowa.

---

[1] Following Mr. Kannady's death in January 2007, this court granted a motion to substitute the personal representative of Mr. Kannady's estate, Chris Kannady, as appellant pursuant to Fed. R. App. P. 43(a)(1).

Both Krebs and McAlester refused to hire Mr. Kannady because of the statutory age limits governing the Oklahoma Police Pension and Retirement System (OPPRS). Mr. Kannady sued Krebs and McAlester, alleging violations of the Age Discrimination in Employment Act (ADEA). The district court entered summary judgment against Mr. Kannady on his ADEA claim. Mr. Kannady appeals from the district court's adverse judgment on his claim against Krebs,[2] arguing that the district court erred in applying the summary judgment standards and in concluding that the OPPRS was not a subterfuge to evade the purposes of the ADEA. Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**.

## I. BACKGROUND

The OPPRS is the state pension and retirement system for Oklahoma police officers. *See* Okla. Stat. tit. 11, § 50-102.1; *Steelman v. Okla. Police Pension & Ret. Sys.*, 128 P.3d 1090, 1094 (Okla. Civ. App. 2005). The Oklahoma legislature established the system in 1977. *See* Oklahoma Municipal Code, ch. 256, art. L, 1977 Okla. Sess. Laws 695, 901 (codified as amended at Okla. Stat. tit. 11, § 50-101, *et seq.*). Municipalities that choose to participate in the OPPRS are subject to certain member participation and age requirements. *See, e.g.*, Okla. Stat. tit. 11, § 50-101(9) (defining a "participating municipality" as a municipality that is making contributions to the OPPRS on behalf of its officers). Notably,

---

[2] Kiowa's participation in this appeal is limited to the filing of a brief in which it asserts that it has no stake in this appeal because Mr. Kannady only appeals the district court's decision with regard to Krebs.

from its enactment, the OPPRS has had a maximum-age ceiling for full-time police officers seeking to join the system and that age ceiling has not exceeded forty-five.[3] In other words, by its terms, the OPPRS has continuously barred full-time law enforcement officers who are over forty-five years of age from entering the system. Specifically, during the time frame of the parties' conduct, the statute provided that all full-time police officers "shall participate in [the OPPRS] upon initial employment with a police department of a participating municipality. . . . [A] a police officer shall be not less than twenty-one (21) nor more than forty-five (45) years of age when accepted for membership in [the OPPRS]." *Id.*

_____

[3] At the time of its enactment, the legislation creating the OPPRS provided for a maximum hiring age of thirty-five. *See* Oklahoma Municipal Code § 50-112, 1977 Okla. Sess. Laws at 906. That legislation was amended in 1989 to raise the maximum hiring age to forty-five. *See* Act of May 12, 1989, ch. 234, sec. 1, § 50-112(A), 1989 Okla. Sess. Laws 657, 657. In *Kopec v. City of Elmhurst*, 193 F.3d 894 (7th Cir. 1999), the Seventh Circuit held that the ADEA exception for law enforcement hiring decisions, which is discussed in detail below, "focuses on the state of local law on March 3, 1983, not at the time the challenged hiring decision was made." *Id.* at 900. If we were to apply this holding of *Kopec* here, that would mean that the operative age for assessing whether Mr. Kannady exceeded the OPPRS maximum-age ceiling for hiring would be thirty-five, and not forty-five. However, we need not definitively opine concerning the correctness of the *Kopec* holding, because it is undisputed that Mr. Kannady was older than the more-relaxed age ceiling in effect when he was denied employment (i.e., he was older than forty-five). Consequently, even if Mr. Kannady could, as a matter of law, permissibly benefit from the more-relaxed age ceiling of the OPPRS, he could not meet it. Therefore, the more fundamental question that we must address is whether the OPPRS is applicable here. More specifically, we are called upon to determine—irrespective of whether thirty-five or forty-five is the operative maximum age ceiling—whether Krebs was acting pursuant to the OPPRS when it refused to hire Mr. Kannady because of his age, such that it can claim the protection of the ADEA's law enforcement exception. For the reasons noted below, we answer that question in the affirmative.

§ 50-112(A). However, the law provided several exceptions to these age requirements. For example, "a municipality that employs two (2) or fewer full-time police officers may employ a police officer who is more than forty-five (45) years of age and who has never participated in the [OPPRS], but such police officer shall not be eligible to participate in the [OPPRS]."[4]  *Id*. § 50-112(E).

It is undisputed that at all material times Mr. Kannady was older than forty-five. In June of 2004, Mr. Kannady left his position as a police officer with the City of Kiowa. Because Kiowa did not participate in the OPPRS, Mr. Kannady had never been a member of the OPPRS. Mr. Kannady soon thereafter sought employment with other law enforcement agencies, including those in McAlester and Krebs. McAlester has been a participating municipality in the OPPRS since 1981, and Krebs had been an active, participating municipality since at least October 2004.[5]  Both cities refused to hire Mr. Kannady as a police officer, claiming that they could not hire him because he was over the age of forty-five and had never been a participating member in the OPPRS. During his job search,

---

[4]      Indeed, the district court noted that Krebs's decision to hire a third officer provided the impetus for its decision to begin affirmatively participating in the OPPRS in October 2004. Aplt. App. at 704 ("It is certainly true that the City of Krebs did not begin participating in the OPPRS until it was required to do so, *i.e.*, when it hired a third full-time police officer in October, 2004.").

[5]      Although the parties dispute the exact date at which Krebs became a participating member in the OPPRS, they do agree that Krebs was a participating member at least as of October 2004. We do not need to determine the exact date Krebs began actively participating in the OPPRS to resolve this appeal. We are content to accept the parties' agreed-upon approximate date of at least October 2004 as the operative one.

Mr. Kannady secretly recorded two conversations he had with Dennis Cook, the Police Chief of Krebs, in which Chief Cook told Mr. Kannady that Mr. Kannady was too old to be hired as a police officer.

After exhausting his administrative remedies with the Equal Employment Opportunity Commission (EEOC), Mr. Kannady filed suit in federal court, asserting violations of the ADEA against Krebs and McAlester and making various state-law claims against Krebs, McAlester, and Kiowa. Following discovery, Mr. Kannady filed a motion for partial summary judgment against Krebs and McAlester on the ADEA claims, and the cities filed cross-motions for summary judgment. The parties disputed the applicability of the law enforcement exception to the ADEA contained in 29 U.S.C. § 623(j). While the ADEA "broadly prohibits arbitrary discrimination in the workplace based on age," *Lorillard v. Pons*, 434 U.S. 575, 577 (1978), Congress has carved out an exception for law enforcement personnel. In pertinent part, the exception provides:

**(j) Employment as firefighter or law enforcement officer**

It shall not be unlawful for an employer which is a State[ or] a political subdivision of a State . . . to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, . . . and the individual has attained—

-6-

> > (A) the age of hiring or retirement,
> > respectively, in effect under applicable State or
> > local law on March 3, 1983; [and]

> > .   .   .

> > (2) pursuant to a bona fide hiring or retirement
> > plan that is not a subterfuge to evade the purposes of
> > this chapter.

29 U.S.C. § 623(j).

In sum, as relevant here, § 623(j) provides that it shall not be unlawful for a local government to refuse to hire a person for a law enforcement position on the basis of age, if that person is over the maximum age of hire that the local government had in effect for that position as of March 3, 1983, and the refusal to hire was pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the ADEA's purposes. *See Kopec*, 193 F.3d at 897–99; *see also* 1 Howard C. Eglit, *Age Discrimination* § 5:4 (2d ed. 2008) (noting that the "exception permits states and their political subdivisions, under certain circumstances, to engage in age discrimination with respect to hiring and firing of firefighters or law enforcement officers, so long as such refusal to hire . . . is done pursuant to a bona fide hiring or retirement plan that is not subterfuge to evade the purposes of the Act").

The date referenced in § 623(j)(1)(A)—March 3, 1983—is the day after the Supreme Court issued *EEOC v. Wyoming*, 460 U.S. 226 (1983), which held that the ADEA's provisions could be constitutionally applied to states and local

-7-

governments with regard to their employment decisions involving law enforcement officers. *Id.* at 243 ("The extension of the ADEA to cover state and local governments, both on its face and as applied in this case, was a valid exercise of Congress's powers under the Commerce Clause.").  "Essentially," the § 623(j) exception "permit[s] state and local governments which, as of March 3, 1983 . . . , had in place age restrictions for firefighters and law enforcement officers, to continue to apply those restrictions." *Kopec*, 193 F.3d at 897; *accord Feldman v. Nassau County*, 434 F.3d 177, 181 (2d Cir. 2006).

In his motion for summary judgment, Mr. Kannady argued that Krebs's refusal to hire him on the basis of age was not protected by the law enforcement exception.  First, he claimed that Krebs denied him employment because of his age *before* October 2004, which is when Krebs began actively participating in the OPPRS; thus, "Krebs' discriminatory policy was independent of and pre-dated its membership in the OPPRS."  Aplt. App. at 52.  In other words, Mr. Kannady contended that Krebs could not assert that it was acting under the maximum-age prescriptions of the OPPRS when it denied him employment prior to October 2004, because it was not a member of the OPPRS at that time.  Consequently, reasoned Mr. Kannady, Krebs could not find protection under § 623(j)(1) because it would not have been acting with reference to an "age of hiring" requirement that was "in effect under applicable State or local law on March 3, 1983."  29 U.S.C. § 623(j)(1)(A).  As evidence of when he was denied employment, Mr.

Kannady cited transcripts of the recorded conversations between himself and Chief Cook and described the conversations as occurring in July 2004.[6] Second, argued Mr. Kannady, even if Krebs satisfied the requirements of § 623(j)(1), Krebs could not rely on the law enforcement exception because the OPPRS was a subterfuge to evade the purposes of the ADEA. *See id.* § 623(j)(2).

In Krebs's cross-motion for summary judgment, Krebs claimed that it could not be liable for violating the ADEA because both requirements of the law enforcement exception had been satisfied: (a) the law establishing the OPPRS was enacted before March 3, 1983, and (b) the OPPRS was a bona fide retirement plan. Krebs made no claim about when it refused to hire Mr. Kannady.

In response to Krebs's cross-motion for summary judgment, Mr. Kannady reiterated his claims. He again asserted that Krebs denied him employment before it became a participating municipality in the OPPRS and that the OPPRS was a subterfuge to evade the purposes of the ADEA. Finally, in Krebs's reply brief, Krebs argued that it did not need to demonstrate the point in time when it refused to employ Mr. Kannady in order to secure the protection of the law enforcement exception. Because the law establishing the OPPRS was in existence

---

[6] This factual assertion is at least partly at odds with the averments of Mr. Kannady's complaint, in which he claimed that the conversations occurred between December 2004 and March 2005. *See* Aplt. App. at 68 ("From December 2004 through March 2005, Defendant Krebs through its agent Dennis Cook, Police Chief of Krebs, represented to Plaintiff on numerous occasions that Plaintiff was too old for any position as a police officer, whether part time or full time.").

before March 3, 1983, and the law applies to all full-time officers hired in Oklahoma by participants in the OPPRS, Krebs argued that "it is irrelevant as to when a particular municipality begins to *apply* the restrictions in the already existing state statute," when that statute's subject matter directly relates to the hiring of law enforcement officers by municipalities. Aplt. App. at 397 (emphasis added).

The district court granted Krebs's cross-motion for summary judgment, concluding that Krebs was protected under the law enforcement exception. First, the court held that Krebs clearly based its refusal to hire Mr. Kannady on the law governing the OPPRS. The court reasoned that Krebs was *subject to* the OPPRS since its pre-1983 enactment, even though it was *not an active participant in* the OPPRS until October 2004; therefore, Krebs could properly claim to have been acting pursuant to the OPPRS and its hiring-age restriction when it refused to hire Mr. Kannady. *See, e.g.*, *id.* at 704 ("[T]he law requiring participation in the OPPRS clearly applied to the City of Krebs (and to every other municipality in the State of Oklahoma) even though it was not actually participating.").

Second, the district court determined that—contrary to Mr. Kannady's assertions—the statements made by Mr. Kannady and Chief Cook during their recorded conversations clearly demonstrated that the conversations occurred *after* October 2004. "Absent any controverting evidence, *e.g.*, an affidavit from [Mr. Kannady] as to when the conversations occurred, it is therefore undisputed that

[Mr. Kannady] was not refused employment based on his age prior to the City of Krebs' participation in the OPPRS." *Id.* at 706. This conclusion presented an additional reason why Krebs's actions fell within the protective ambit of § 623(j)(1): even if active participation in the OPPRS was required on these facts to claim the protection of § 623(j)(1), according to the district court, the evidence established that Krebs was an active participant of the OPPRS at the time it refused to hire Mr. Kannady.[7] Finally, the court held that the requirements of § 623(j)(2) were met because the OPPRS was not a subterfuge to evade the purposes of the ADEA.

After granting summary judgment on Mr. Kannady's ADEA claims, the district court declined to exercise supplemental jurisdiction over Mr. Kannady's state-law claims against Kiowa. Mr. Kannady timely appealed the judgment as to Krebs.

## II. DISCUSSION

### A. Standard of Review

---

[7]    There is no dispute among the parties that a conclusion that Krebs refused to hire Mr. Kannady after October 2004 would put Krebs within the protective scope of 29 U.S.C. § 623(j)(1) (i.e., any age discrimination by Krebs in refusing to hire Mr. Kannady would not violate that ADEA section). *See* Aplt. Reply Br. at 7 ("[I]f Krebs' refusal to hire Mr. Kannady, on the basis of his age, occurred after October 1, 2004, then Krebs is protected by the law enforcement exception to the ADEA, provided the OPPRS complies with the remaining provisions of the ADEA . . . .").

"We review de novo a grant of summary judgment, applying the same standard used by the district court." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). "Summary judgment should be granted 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)), *cert. denied*, 130 S. Ct. 259 (2009). "When applying this standard, we examine the factual record in the light most favorable to the party opposing summary judgment." *Belhomme v. Widnall*, 127 F.3d 1214, 1216 (10th Cir. 1997). The moving party has "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000). "If the movant carries this initial burden, the nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Jenkins*, 81 F.3d at 990. "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Id.* "If

there is no genuine issue of material fact in dispute, then we next determine if the district court correctly applied the substantive law." *Id.*

## B. The District Court's Application of Summary Judgment Standards

On appeal, Mr. Kannady argues that the district court erred in holding that Krebs acted pursuant to the OPPRS and, consequently, with reference to an "age of hiring . . . in effect under applicable State or local law on March 3, 1983." 29 U.S.C. § 623(j)(1)(A). First, Mr. Kannady argues that the district court erred in holding that, regardless of the precise date when Krebs refused to hire Mr. Kannady, Krebs acted under "applicable" law because it based Krebs's decision on the OPPRS. According to Mr. Kannady, if Krebs had refused to hire Mr. Kannady before October 2004, it could not have been acting under "applicable" law, since the precepts of the OPPRS only apply to "participating municipalities," and Krebs was not a participating municipality before October 2004. Next, Mr. Kannady attacks the district court's conclusion that Krebs's refusal to hire Mr. Kannady actually occurred after October 2004 and there was no genuine factual dispute about this material matter. In support of this argument he first claims that Krebs failed to carry its *initial* burden of demonstrating the absence of a genuine issue of material fact because it "offered no undisputed proof or facts concerning when the discriminatory conduct took place." Aplt. Opening Br. at 15. And second, Mr. Kannady argues that the district court erred in determining that it was

undisputed that the recorded conversations between Mr. Kannady and Chief Cook occurred after October 2004.

Our resolution of Mr. Kannady's contentions regarding the district court's application of summary judgment standards ultimately turns upon the district court's conclusion that all material facts indicated that Krebs refused to hire Mr. Kannady only after October 2004 (i.e., only after it affirmatively began participating in the OPPRS). If this conclusion is affirmed, there is no dispute that § 623(j)(1) is satisfied, because Krebs would clearly have acted pursuant to a plan in effect under covered state law. As Mr. Kannady highlights, Krebs did not argue in its motion for summary judgment that Krebs was entitled to summary judgment because it was undisputed that Krebs refused to hire Mr. Kannady only after October 2004. On the contrary, Krebs argued that the date it refused to hire Mr. Kannady was "irrelevant." Aplt. App. at 397. Because Krebs made no attempt to demonstrate that the alleged discrimination did not occur until after October 2004, Mr. Kannady believes that Krebs failed to carry its initial burden of demonstrating that there was no evidence in the record to support judgment for Mr. Kannady. *See Trainor*, 318 F.3d at 979 ("Even when . . . the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."). Thus, Mr. Kannady believes the district court improperly granted Krebs's motion for

summary judgment. *See id.* ("If a moving party fails to carry its initial burden of production, . . . the nonmoving party may defeat the motion for summary judgment without producing anything." (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000))).

However, we conclude that even assuming *arguendo* that Krebs—as the moving party—failed to carry its initial burden under the analytic framework for summary judgment, the district court did not err in determining that Krebs could avail itself of § 623(j)(1)'s protection, based upon the record evidence concerning the date when Krebs denied employment to Mr. Kannady. Under our working assumption—i.e., that Krebs failed to carry its initial burden—we view the district court's determination as effectively being a sua sponte resolution of the matter at issue. And, in limited circumstances, including those present here, the law permits district courts at the summary judgment phase to perform precisely that sua sponte function. Accordingly, so long as our de novo review confirms that the district court was correct in its sua sponte resolution of the issue—that is, when it held that there was no genuine factual dispute that Krebs denied Mr. Kannady employment *after* October 2004—then we discern no error in the district court's ultimate conclusion (absent a subterfuge under § 623(j)(2)) that summary judgment was properly entered in favor of Krebs.

A district court may grant summary judgment on a ground not formally raised in a summary judgment motion, "'so long as the losing party was on notice

that she had to come forward with all of her evidence.'" *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 620 (10th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)); *see Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057, 1067 (10th Cir. 2007). "If a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came sua sponte."[8] *Ward v. Utah*, 398 F.3d 1239, 1245–46 (10th Cir. 2005). "A party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000).

---

[8] In fact, the district court could have potentially entered summary judgment for Krebs even if Krebs had filed no cross-motion at all. *See Doña Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*, 516 F.3d 900, 912 (10th Cir. 2008) ("The weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under rule 56." (internal quotation marks omitted)). As one commentator notes, "the practice of allowing summary judgment to be entered for the nonmoving party in the absence of a formal cross-motion is appropriate. It is in keeping with the objective of Rule 56 to expedite the disposition of cases and, somewhat more remotely, with the mandate of Rule 54(c) requiring the court to grant the relief to which a party is entitled 'even if the party has not demanded such relief in the pleadings.'" 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720 (3d ed. 1998) (footnotes omitted); *see also Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995) (noting that if the district court grants summary judgment "in favor of an opposing party when one party has made a motion for summary judgment," "the failure of the court to provide notice may not be as detrimental since the moving party is at least aware that the issue has been raised").

In this case, Mr. Kannady cannot demonstrate prejudice because he clearly

knew that the date of the alleged discrimination would be an issue, and he had a

full opportunity to present evidence to support his position.  After all, it was Mr.

Kannady—not Krebs—who raised this issue in *his* motion for summary judgment.

When a district court's sua sponte determination is based on issues identical to

those raised by a moving party, the risk of prejudice is significantly lowered

because "the judge already is engaged in determining whether a genuine issue of

material fact exists and the parties have been given an opportunity to present

evidence designed either to support or refute the request for the entry of

judgment."  10A Charles Alan Wright et al., *Federal Practice and Procedure*

§ 2720 (3d ed. 1998); *see Bridgeway Corp.*, 201 F.3d at 140 ("The threat of

procedural prejudice is greatly diminished if the court's *sua sponte* determination

is based on issues identical to those raised by the moving party." (brackets and

internal quotation marks omitted)); *see also Jones v. Salt Lake County*, 503 F.3d

1147, 1152 (10th Cir. 2007) (holding that plaintiffs were not prejudiced where

they previously had filed a motion for partial summary judgment on the issues on

which the court granted summary judgment sua sponte); *Hynes v. Squillace,* 143

F.3d 653, 656–57 (2d Cir. 1998) (noting that since the plaintiff had moved for

summary judgment on a retaliation claim before the magistrate judge, granting the

defendants summary judgment sua sponte on the retaliation claim was not

prejudicial because the plaintiff had "had every incentive to submit all evidence

-17-

supporting his retaliation claim"); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (holding that the district court's sua sponte decision to grant summary judgment against the moving party was not prejudicial in part because the court's "*sua sponte* determination [was] based on issues identical to those raised by the moving party").

Additionally, not only did Mr. Kannady raise this issue in his motion for summary judgment, he asserted in unequivocal terms that Krebs refused to hire him before October 2004, and he identified evidence in the record to support his claim. Consequently, the district court could reasonably view the record as including all of the evidence that Mr. Kannady deemed appropriate to support his claim and thus move to decide for purposes of summary judgment the timing question relating to Krebs's refusal to hire Mr. Kannady. *See Bridgeway Corp.*, 201 F.3d at 140 (upholding a grant of summary judgment sua sponte because, *inter alia*, the issue "did not arise out of the blue" and the plaintiff "repeatedly claimed to the district court that it had introduced sufficient evidence concerning that very issue"). In this case, the district court, after reviewing Mr. Kannady's claim that the discrimination occurred before October 2004, actually came to the opposite conclusion: that the undisputed evidence demonstrated that the discrimination occurred *after* October 2004. For the reasons noted, we discern no error in the district court's conduct in making this determination on the timing

issue related to Krebs's refusal to hire Mr. Kannady, even assuming *arguendo* that Krebs did not carry its initial summary judgment burden.

We next review de novo whether the district court's conclusion is correct that the evidence unequivocally established that the refusal to hire Mr. Kannady occurred after October 2004. Mr. Kannady argues that the district court improperly weighed evidence and made inferences from the facts when it concluded that the recorded conversations between himself and Chief Cook occurred after Krebs began participating in the OPPRS in October 2004. We disagree.

We conclude that the district court did not err in concluding that the recorded conversations occurred after October 2004 and there was no genuine factual dispute about this, because the conversations are self-dating. During one conversation, Mr. Kannady and Chief Cook make statements that demonstrate that the conversation took place on December 30, 2004. Mr. Kannady asks: "What's tomorrow night—is tonight New Year—tomorrow night's New Year's Eve." Aplt. App. at 116. Chief Cook responds: "Yeah." *Id.* During the other conversation, Mr. Kannady indicates that this conversation occurred in February 2005. In discussing his plans to take a firearms training course, Mr. Kannady says: "I'm going to go next month, I think, end of next month or first of April. I'm not sure when—when it is now, but I'm set up to go." *Id.* at 105. Because Mr. Kannady did not start looking for a job with Krebs until July 2004 at the

-19-

earliest, these statements clearly demonstrate that the recorded conversations occurred after October 2004.

Although Mr. Kannady asserted in his motion for summary judgment that the recorded conversations occurred before October 2004, the district court was under no obligation to accept a claim that was "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *cf. Green v. Post*, 574 F.3d 1294, 1296 & n.4 (10th Cir. 2009). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott*, 550 U.S. at 380 (quoting Fed. R. Civ. P. 56(c)). Since the recorded conversations clearly occurred after October 2004,[9] the district court did not err in

_____

[9] On appeal, Mr. Kannady attempts to cast doubt on the dates of the recorded conversations by pointing to evidence that was attached by Krebs to a motion in limine and by Kiowa to its motion for summary judgment on the state-law claims. Additionally, he insinuates that there was evidence in the record that could "support an inference" that Krebs refused to hire him before October 2004 on other occasions, not just in the recorded conversations. Aplt. Opening Br. at 12.

As previously discussed, Mr. Kannady argued in his motion for summary judgment in unequivocal terms that he was denied employment before October 2004, and he identified evidence in the record to support his claim. Thus, Mr. Kannady clearly had a full opportunity to put forth his best case in his motion for summary judgment, and it was reasonable for the district court to assume that he had done so. These arguments he now makes on appeal were not before the district court, and we are not inclined to consider them here. *See Coach Leatherware Co.*, 933 F.2d at 167–68 (concluding that defendants were not prejudiced by a grant of summary judgment against them when they had previously "contended no material issues of fact prevented summary judgment in their favor" and noting that the defendants "had significant incentive to put

(continued...)

-20-

determining that Krebs was participating in the OPPRS when it denied Mr.

Kannady employment based on his age, and was, therefore, acting pursuant to age

limits "in effect under applicable State or local law on March 3, 1983."[10]  29

U.S.C. § 623(j)(1)(A).

---

[9](...continued)
forward any compelling evidence in support of their summary judgment motion since the law prevented the district court from drawing favorable inferences on their behalf"); *cf. Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981) ("[C]ross motions for summary judgments . . . authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.").

   Nevertheless, even if Mr. Kannady had submitted this evidence at the summary judgment stage, we are confident that the outcome would have been the same.  The recorded conversations are self-dating, and thus, any dispute about the date of the tapes cannot be "genuine."  Furthermore, the numerous inferences Mr. Kannady asks us to draw from the evidence are simply too attenuated for us to conclude that there is a genuine issue of material fact about when he was denied employment.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. Instead, the nonmoving party must present facts such that a reasonable jury could find in its favor." (citation omitted)).

[10]    Since we affirm the district court's conclusion that Krebs refused to hire Mr. Kannady only after October 2004, we need not address the district court's additional rationale for why Krebs satisfied the requirements of § 623(j)(1) (i.e., that Krebs was subject to the OPPRS since its pre-1983 enactment, even though it was not an active participant in the OPPRS until October 2004 and, therefore, Krebs could properly claim to have been acting pursuant to the OPPRS and its hiring-age restriction when it declined to hire Mr. Kannady, even if that decision occurred before October 2004).

## C.  The OPPRS as a Subterfuge

Under the ADEA's law enforcement exception, a state can refuse to hire an individual as a firefighter or law enforcement officer if this refusal is "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes" of the ADEA.  29 U.S.C. § 623(j)(2).  Mr. Kannady does not contend that the OPPRS is not a bona fide hiring or retirement plan. Instead, he argues that the district court erred in determining that the OPPRS is not a subterfuge to evade the purposes of the ADEA.  Mr. Kannady contends that the OPPRS is a subterfuge because the Oklahoma legislature enacted the OPPRS not out of public safety concerns, but for the "invidious financial purpose" of enhancing the state's pension fund.  Aplt. Opening Br. at 5.  We conclude that Mr. Kannady cannot demonstrate subterfuge because he has failed to identify a non-hiring substantive provision of the ADEA that the OPPRS is a scheme to evade.

Like our sister circuits, we construe the word "subterfuge" in accordance with its ordinary meaning to be "a scheme, plan, stratagem, or artifice of evasion." *Minch v. City of Chicago*, 363 F.3d 615, 624 (7th Cir. 2004); *see also Feldman,* 434 F.3d at 183; *Minch*, 363 F.3d at 623–28.  A plaintiff challenging the law enforcement exception bears the burden of establishing that a hiring plan is a subterfuge.  *Feldman*, 434 F.3d at 184; *Minch*, 363 F.3d at 627–28.  Because the ADEA's law enforcement exception expressly allows a state or local government to create a hiring or retirement plan for law enforcement personnel

that discriminates on the basis of age, a government employment plan that follows the statute's precepts can hardly be said to be a "scheme of evasion." *See Feldman*, 434 F.3d at 184 ("There is nothing deceptive about the state legislature doing exactly what Congress provided it the authority to do—namely, benefitting from an exception to the general prohibition in the ADEA against discrimination on the basis of age."); *Minch*, 363 F.3d at 629 ("[D]oing something that the statute expressly permits does not evade its prohibitions."). Thus, a plaintiff cannot prove that a hiring or retirement plan for law enforcement personnel is a "subterfuge to evade the purposes" of the ADEA simply by demonstrating that the plan discriminates in hiring and retirement on the basis of age. *See Feldman*, 434 F.3d at 184 (noting that the law enforcement exception would be a "dead letter" if subterfuge could be demonstrated simply by proving "discriminat[ion] on the basis of age rather than ability"); *Minch*, 363 F.3d at 628–29; *see also Correa-Ruiz v. Fortuño*, 573 F.3d 1, 13 (1st Cir. 2009) ("[W]e thus join the Second and Seventh Circuits in rejecting an interpretation of 'subterfuge' that would effectively nullify the exemption."), *cert. denied*, 78 U.S.L.W. 3208 (U.S. Nov. 16, 2009) (No. 09-382).

Instead, a plaintiff proves subterfuge by showing "'that the employer is using the [law enforcement] exemption as a way to evade *another* substantive provision of the act.'" *Feldman*, 434 F.3d at 184 (emphasis added) (quoting *Minch*, 363 F.3d at 629); *see Correa-Ruiz*, 573 F.3d at 14. For example, if a state

or local government imposed age limits on hiring police officers in order to retaliate against employees for protesting practices made illegal by the ADEA, the hiring plan would clearly be a subterfuge to evade other provisions of the ADEA. *See Minch*, 363 F.3d at 630 (identifying hypothetical instances of subterfuge). In this case, Mr. Kannady must show that the OPPRS is a "'means of discriminating in another aspect of the employment relationship—that is, other than in the hiring decision—in a way that the ADEA forbids.'" *Feldman*, 434 F.3d at 184 (brackets omitted) (quoting *Minch*, 363 F.3d at 629).

In this regard, Mr. Kannady's main argument—that the OPPRS was created for an "invidious financial purpose," and not because of public safety concerns—is unavailing. Aplt. Opening Br. at 5. In particular, Mr. Kannady argues that "the OP[P]RS is hiding behind the veil of the law enforcement exemption to discriminate against law enforcement candidates over the age of forty-five (45) . . . merely for financial reasons, since older officers do not pay as much into the pension plan created through the OPPRS." *Id.* Even if Mr. Kannady could prove that the Oklahoma legislature adopted the OPPRS for reasons unrelated to public safety, he could not establish subterfuge unless these motivations "reveal a kind of discriminatory conduct that the ADEA by its very terms forbids." *Minch*, 363 F.3d at 629; *see also id.* (noting that state or local governments "cannot be liable for their *motives* if their *conduct* has not evaded the ADEA's prohibitions" (internal quotation marks omitted)). That the

-24-

Oklahoma legislature allegedly took financial considerations into account when adopting the OPPRS's hiring-age ceiling cannot by itself demonstrate that the OPPRS is a subterfuge "that frustrates provisions of the ADEA not directly subject to the law enforcement exception." *Feldman*, 434 F.3d at 185; *see also id.* at 184 (noting that "it is difficult to imagine *any* legislation on social or labor concerns that is wholly divorced from budgetary or fiscal considerations").

Ultimately, Mr. Kannady cannot demonstrate subterfuge because he has failed to identify a non-hiring substantive provision of the ADEA that the OPPRS is a scheme to evade. *See id.* (rejecting the plaintiff's claims of subterfuge where the plaintiff "never points to any specific provision of the ADEA that is violated by [the New York statute]"). Although Mr. Kannady has at various times throughout the appeal hinted at possible provisions or regulations that might satisfy his burden, for the reasons noted below, we decline to consider the merits of any of these arguments.

First, Mr. Kannady argues that the OPPRS violates EEOC regulations; because he did not raise this argument before the district court, however, he has waived it on appeal. *See Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1245 n.1 (10th Cir. 2009). Mr. Kannady's contrary contention that he submitted to the district court "federal case law that cited the EEOC regulations," Aplt. Reply Br. at 16, is unavailing. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) ("[T]he vague and ambiguous presentation of a

theory before the trial court [does not] preserve that theory as an appellate issue." (internal quotation marks omitted)).  We only deviate from the waiver rule "in the most unusual circumstances, which may include issues regarding jurisdiction and sovereign immunity, instances where public interest is implicated, or where manifest injustice would result." *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1386 (10th Cir. 1997) (ellipses and internal quotation marks omitted). Because we find no such unusual circumstances or manifest injustice here, we deem this argument to be waived and do not consider it.

Second, at oral argument, Mr. Kannady suggested that the OPPRS was being used as a subterfuge to evade a provision of the ADEA that pertains to benefit plans and retirement.  Although Mr. Kannady made a similar argument at the district court regarding 29 U.S.C. § 623(f)(2), he did not make this argument in his opening brief on appeal and, in fact, specifically indicated in his reply brief that we "need not be burdened with this argument because it was essentially abandoned" in the district court.  Aplt. Reply Br. at 13.  Therefore, Mr. Kannady has waived this argument and we will not consider it on appeal.  *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

Finally, Mr. Kannady argues in his reply brief that he identified a substantive provision of the ADEA that the OPPRS was a scheme to evade by citing 29 U.S.C. § 623(a)(1) in his opening brief, which provides that an employer

may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." While Mr. Kannady did cite § 623(a)(1) in his opening brief, he failed to provide any analysis or reasoning whatsoever for the assertion he now makes. Indeed, even in his reply brief, Mr. Kannady did little more than assert in conclusory fashion that the OPPRS is a subterfuge to evade § 623(a)(1). Because Mr. Kannady has failed to adequately present his § 623(a)(1) argument in his opening brief, we decline to address it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

In order to carry his burden of proving subterfuge, Mr. Kannady needed to prove that Krebs was using the OPPRS to evade a non-hiring substantive provision of the ADEA. Since Mr. Kannady cannot identify this ADEA provision, he has failed to demonstrate that the OPPRS is a subterfuge to evade the purposes of the ADEA.[11]

---

[11] Mr. Kannady also challenges the district court's holding that the OPPRS could not be a subterfuge because the OPPRS was enacted prior to the ADEA's application to state and local governments. Because Mr. Kannady has failed to identify a non-hiring substantive provision of the ADEA that the OPPRS is a scheme to evade, we conclude that he cannot prove that the OPPRS is a subterfuge. Therefore, we need not address the district court's alternative rationale for why the OPPRS is not a subterfuge.

Furthermore, Mr. Kannady challenges the district court's determination that
(continued...)

[11](...continued)

he lacks standing to argue in support of his subterfuge argument that certain provisions of the OPPRS operate in a manner that violates the ADEA, in part because they provide greater protection for younger workers. In particular, Mr. Kannady points to two exceptions of the OPPRS that permit participating municipalities to employ an officer whose age exceeds the OPPRS maximum-age ceiling if they (1) employ two or fewer officers, or (2) are filling the position of police chief. *See, e.g.*, Aplt. Opening Br. at 19. The district court reasoned that Mr. Kannady "lacks standing" to advance contentions related to these two exceptions because "neither of these exceptions to participation in the OPPRS apply to him." Aplt. App. at 704 n.4. However, contrary to the district court's reasoning, we do not view the standing doctrine as implicated here. We assess the propriety of standing "as of the time the action is brought" *Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1099 (10th Cir. 2006) (internal quotation marks omitted). From that temporal vantage point, standing analysis "is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief." *Utah v. Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998) (internal quotation marks omitted). Judged from the time this action commenced, there is not the slightest hint in his complaint averments that Mr. Kannady sought any relief based upon the alleged discriminatory effects of the two referenced provisions of the OPPRS. Nor did Mr. Kannady purport to seek relief in the district court based upon an alleged harm to himself, or indeed to third parties, arising from the alleged ADEA violations effected by these provisions. Mr. Kannady's subsequent reliance in summary judgment litigation on the alleged discriminatory effects of these two provisions did not properly present a question of standing. *Cf. Nat'l Collegiate Athletic Assoc. v. Califano*, 622 F.2d 1382, 1385 (10th Cir. 1980) ("The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." (internal quotation marks omitted)). Rather, this simply appears to be a situation where Mr. Kannady has argued (albeit in a somewhat confusing manner) that the fact that the OPPRS can be shown to violate the ADEA through the operation of these two provisions bolsters his argument that the maximum hiring-age restriction is a subterfuge to evade the purposes of the ADEA. Even assuming *arguendo*, however, that the ADEA violations purportedly effected by such seemingly unrelated provisions as the two identified here, could have probative force on the question of whether the OPPRS's hiring-age restriction is a subterfuge, the principal hurdle Mr. Kannady has to clear still relates to the identification of a non-hiring substantive provision of the ADEA that the OPPRS hiring provision was a subterfuge to evade. And, for the reasons noted above, Mr. Kannady has not begun to surmount that hurdle. Therefore, any error by the district court in concluding that Mr. Kannady lacked standing does

(continued...)

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Krebs.

---

[11](...continued)
not affect our analysis or the outcome here.