**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALLISON NAZINITSKY,

    Plaintiff - Appellant,

v.

INTEGRIS BAPTIST MEDICAL
CENTER, INC., d/b/a NAZIH ZUHDI
TRANSPLANT INSTITUTE,

    Defendant - Appellee.

No. 20-6076
(D.C. No. 5:19-CV-00043-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.[**]
_____

Dr. Allison Nazinitsky was paid less, but purportedly worked harder, than three of

her more experienced male colleagues. She claims that this arrangement violated the

Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. The district court dismissed these claims on summary

judgment. On appeal, Dr. Nazinitsky challenges this ruling. We affirm the district court.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The unredacted briefs and appendix filed under seal with provisional
permission from the clerk's office will remain sealed. The unredacted Order and
Judgment is also sealed.

## BACKGROUND

In 2015, INTEGRIS Baptist Medical Center, Inc. d/b/a Nazih Zuhdi Transplant Institute ("Integris") hired Dr. Nazinitsky for a two-year term as a transplant-infectious-disease physician, her first physician position after her residency and fellowship. Her desired compensation was $250,000. Integris provided this in base compensation ($225,000 in base salary and $25,000 for medical-director services) and, additionally, offered a second-year performance bonus of up to $25,000.[1] Integris set this compensation after reviewing an opinion letter from Navigant, an independent consulting firm, regarding the market compensation for a physician of Dr. Nazinitsky's specialty, experience, and skills.

Dr. Nazinitsky left Integris after the two-year term, choosing not to renew her contract after learning of staff misconduct allegations made against her. About a year later, she filed an administrative proceeding with the Oklahoma Attorney General's Office and the Equal Employment Opportunity Commission, charging discrimination, and the next year, she filed this lawsuit.

---

[1] We base this description on the employment agreement. The parties dispute whether this was Dr. Nazinitsky's total compensation. *See*, *e.g.*, Appellee's Answer Br. at 16 (arguing that Dr. Nazinitsky's first-year compensation was $262,500 and her second-year potential compensation was $312,500). But this issue isn't material. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) ("An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim or defense." (citations and internal quotation marks omitted)). Regardless of how the issue is resolved, for the reasons below, no reasonable factfinder would find for Dr. Nazinitsky.

In relevant part, Dr. Nazinitsky claims that Integris violated the EPA and Title VII by engaging in wage discrimination.[2] She compares her pay to a then-fourteen-year Integris family-medicine physician, a then-seven-year Integris nephrologist (kidney specialist), and a then-ten-year Integris cardiologist, whose base salaries were between roughly $300,000 and $660,000 and whose total compensations were between roughly $370,000 and $750,000.[3] According to Dr. Nazinitsky, the men's compensations ranged from the 70th to over the 90th percentiles of the market-compensation ranges for their respective specialties. In contrast, she calculates that she earned at between the 40th and 60th percentiles for hers. She argues that this pay disparity must have resulted from sex discrimination because she worked harder than the male physicians.

The district court dismissed Dr. Nazinitsky's claims on summary judgment. We review under 28 U.S.C. § 1291.

## DISCUSSION

### I.  Standard of Review

"We review a grant of summary judgment de novo and apply the same legal standard used by the district court." *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003) (citation omitted). We will affirm "if the movant shows that there is no genuine

---

[2] Dr. Nazinitsky brought several additional Title VII claims, which the district court dismissed on summary judgment. On appeal, Dr. Nazinitsky hasn't challenged these rulings.

[3] The parties dispute whether we should compare base or total compensations. Much like the base-compensation dispute, we needn't resolve this issue because either way, no reasonable factfinder would find for Dr. Nazinitsky.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citation omitted).

"The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation and internal quotation marks omitted). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (alteration in original) (citation omitted). "If the movant carries this initial burden, the nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (citation omitted). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue." *Nahno-Lopez*, 625 F.3d at 1283 (citation and internal quotation marks omitted). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim or defense." *Id.* (citation and internal quotation marks omitted).

## II. Legal Background

Put simply, the EPA prohibits pay discrimination based on the recipient's sex. 29 U.S.C. § 206(d).

4

> To establish a prima facie case of pay discrimination under the EPA, a [female] plaintiff must demonstrate that: (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances.

*Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015) (citation and internal quotation marks omitted).

Once the plaintiff has made a prima facie case, "the burden of *persuasion* then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons," *Mickelson v. N.Y. Life Ins.*, 460 F.3d 1304, 1311 (10th Cir. 2006) (citation omitted): "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex," *Riser*, 776 F.3d at 1198 (quoting 29 U.S.C. § 206(d)(1); and then citation omitted). "To meet this burden, an employer must submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *Id.* (citation and internal quotation marks omitted). "At the summary judgment stage, this means an employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." *Id.* (citation and internal quotation marks omitted).

Title VII similarly prohibits "discriminat[ing] against any individual with respect to his compensation . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). But for Title VII claims (unlike for EPA claims), "a plaintiff has the ultimate

5

burden of proving her employer intentionally discriminated against her." *Riser*, 776 F.3d at 1199 (citation omitted). "A plaintiff can establish this by either direct evidence or circumstantial evidence that creates an inference of intentional discrimination." *Id.* Dr. Nazinitsky attempts to do the latter.

We assess claims based on circumstantial evidence under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Riser*, 776 F.3d at 1199–1200 (citation omitted). Under this framework,

> [f]irst a plaintiff must establish a prima facie case of pay discrimination. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant does so, the burden shifts back to the plaintiff to show that his or her protected characteristic was a determinative factor in the defendant's employment decision or that the defendant's explanation was merely pretextual.

*Id.* at 1200 (citation and internal quotation marks omitted). To establish a prima facie case, a female plaintiff alleging sex discrimination "must show she occupie[d] a job similar to that of higher paid males." *Id.* (citation and internal quotation marks omitted). At the next step, the defendant's "burden is exceedingly light; the defendant must merely proffer non-gender based reasons, not prove them." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997) (citation and internal quotation marks omitted). At the last step, a plaintiff may show pretext "by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citation omitted).

6

## III.     The EPA Claim

After the district court assumed arguendo that Dr. Nazinitsky had made a prima facie case, the EPA claim turned on whether Integris had sufficiently proven any defenses. Addressing this, the court ruled that all reasonable factfinders would conclude that the wage disparity was based on these factors other than sex: "(1) a bona fide, gender-neutral pay classification system based on marketplace value [of physicians' medical specialties], and (2) employee experience." Appellant's App. vol. 2 at 445.

Dr. Nazinitsky's challenge to this ruling on appeal fails. For one, she has admitted that the market value of the physicians' medical specialties accounts for the pay disparity in part. The market compensation for cardiologists, nephrologists, and family-medicine physicians was higher than that for infectious-disease physicians. By the district court's and our calculations, the difference in market value accounts for roughly forty percent of the difference between Dr. Nazinitsky's compensation and the male comparators'.

Second, no reasonable jurors would find other than that relative experience explains the remaining pay differential (i.e., why Dr. Nazinitsky was paid at a lower percentile of the market-compensation range for her specialty than the male comparators were of theirs). Common sense tells us as much here. Dr. Nazinitsky was a first-year physician and is comparing herself to physicians with at least seven years' more experience.[4] *Cf. Mickelson*, 460 F.3d at 1313 (commenting that, when one higher-paid

---

[4] This fact distinguishes this case from those Dr. Nazinitsky has cited on appeal. *See Mickelson*, 460 F.3d at 1312–14 (regarding a comparator with less

comparator has significantly more experience, "we might well conclude that . . . no rational trier of fact could conclude other than that his experience was the determinative factor in setting his salary"). But our decision rests on more than good sense alone. Integris employees have affirmed that Dr. Nazinitsky's relative experience affected her pay, and the Navigant opinion letter reflects that experience is a factor in setting physician compensation.

Dr. Nazinitsky argues that this explanation can't be right because physician compensation must be correlated to personal productivity.[5] Purportedly, this premise is supported by certain regulations on physician compensation and the fact that "the fair market surveys" Navigant considered included productivity data. Appellant's Opening Br. at 17; *see* Appellant's Reply Br. at 5–6 (citing 42 C.F.R. §§ 411.354(d)(1), 411.357). But we disagree. *See*, *e.g.*, Appellant's App. vol. 2 at 314 (listing qualifications, contributions, and skills as other factors relevant to determining physician compensation).[6] The regulations cited don't stand for this proposition, *see* 42 C.F.R.

---

relevant experience than plaintiff); *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 117–19, 122–23 (4th Cir. 2018) (addressing disparities in starting salaries).

[5] Relying on one of our unpublished orders, the district court treated this argument as rebuttal and shifted the burden to Dr. Nazinitsky to show that Integris' defenses were pretextual. *See*, *e.g.*, Appellant's App. vol. 2 at 448 (citing *Casalina v. Perry*, 708 F. App'x 938, 941 (10th Cir. 2017) (unpublished)). Even if we may question whether this follows *Mickelson*, 460 F.3d at 1311 ("the employer's burden in an EPA claim is one of ultimate persuasion" (citation omitted)), we needn't resolve this issue because Dr. Nazinitsky's argument wholly lacks merit.

[6] One of these surveys is described as follows: "[This survey] focuses on the individual compensation and productivity of physicians and other clinical staff,

§§ 411.354(d)(1), 411.357, and even though the Navigant letter suggests that productivity is one factor relevant to setting pay, this doesn't mean that Dr. Nazinitsky's point is correct or that any reasonable factfinder would find for her.

## IV.    The Title VII Claim

In connection with the Title VII claim, the parties have repeated the foregoing arguments. Accordingly, assuming arguendo that Dr. Nazinitsky has made a prima facie Title VII case (as the district court did), we find that Integris has articulated legitimate, non-discriminatory reasons for the pay disparity. And, for the reasons above, no reasonable factfinder would find them pretextual.

### CONCLUSION

Therefore, we affirm the district court.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

starting salaries of new residents and experienced new hires, as well as salaries for physician leadership, nurse practitioners, and physician assistants." *Compensation Survey*, AMGA, https://www.amga.org/performance-improvement/best-practices/benchmarking-surveys/compensation-survey/ (last visited Apr. 9, 2021).